

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00609-CR

---

MATTHEW LEE BARNETT                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                              STATE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
### TRIAL COURT NO. CR12446

----------

## DISSENTING OPINION

----------

I must respectfully dissent from the opinion of the conscientious majority for more than one reason.

The majority, relying on *Swain v. State*,[1] holds that Barnett did not preserve his suppression issue for appellate review. The *Swain* court stated,

---

[1]181 S.W.3d 359 (Tex. Crim. App. 2005), *cert. denied*, 549 U.S. 861 (2006).

In his written "Motion to Suppress Evidence," appellant generally argued "[t]hat any statements made by Defendant were obtained in violation of his right to counsel and his right against self-incrimination as guaranteed by U.S. Const. amends. V, VI, and XIV, and Tex. Const. art. I, §§ 10 and 19." He also generally argued in his motion to suppress that his statements were inadmissible under Article 38.23. These arguments were global in nature and contained little more than citations to constitutional and statutory provisions. At the hearing on the motion to suppress, appellant failed to complain about being questioned after asserting his right to counsel, and instead simply objected that his statements were inadmissible because the police illegally arrested him and failed to comply with the requirements of Articles 38.22, 14.03, and 14.06. Appellant's global statements in his pretrial motion to suppress were not sufficiently specific to preserve the arguments he now makes on appeal.[2]

*Swain* turns on the fact that Swain argued constitutional rights generally in the trial court but only on appeal did he raise the fact that he had requested counsel and was denied access to counsel. Thus, the *Swain* trial court was not put on notice of his true complaint.

In the case now before this court, both in the trial court and on appeal, Barnett complained of the admission of the fruits of the poisonous tree: that "[a]ll evidence, both physical evidence as well as [his] statements . . . , collected as a result of the traffic stop in this case should be suppressed." It is true that after trial, Barnett was able to list the specific items that had been admitted into evidence during the trial, but the trial court was on notice of the items Barnett sought to suppress—his statement and the items the police seized when they searched the car and Barnett—as well as the reasons for which they should be

_____
[2]*Id.* (citing Tex. R. App. P. 33.1).

2

suppressed.  The posture of this case is not that of *Swain*.  I would hold that Barnett sufficiently preserved his suppression issue for appellate review.

I would also hold that the warrantless detention of Barnett was not justified. "The Fourth Amendment to the United States Constitution permits a warrantless detention of a person, short of a full-blown custodial arrest, if the detention is justified by reasonable suspicion."[3]  The legality of traffic stops for Fourth Amendment purposes is subject to analysis under the *Terry* standard,[4] that is, whether the officer's action was justified at its inception and whether the search and seizure were reasonably related in scope to the circumstances that justified the stop in the first place.[5]

Barnett argues that Deputy Lane saw no real traffic offense.  The trial court did not find or conclude that Barnett committed a traffic offense in Lane's presence.  The majority essentially holds that because Barnett did not challenge one of the grounds for denying the criminal version of summary judgment, he loses:

> Barnett's sole point on appeal must be overruled because he fails to challenge a ground stated by the trial court in its findings of fact and conclusions of law as to why Lane's stopping of Barnett was in fact constitutionally firm—that Lane had reasonable suspicion that

---

[3]*Johnson v. State*, 414 S.W.3d 184, 191 (Tex. Crim. App. 2013).

[4]*Terry v. Ohio*, 392 U.S. 1, 28, 88 S. Ct. 1868, 1883 (1968).

[5]*See Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).

3

Barnett was a party to the methamphetamine sale that occurred in Cresson prior to Lane having stopped him.[6]

Respectfully, the term "reasonable suspicion" is not a magic talisman that suspends the protections of the Fourth Amendment's warrant requirement. As Justice Marshall explained in his *Sokolow* dissent,

> The reasonable-suspicion standard is a derivation of the probable-cause command, applicable only to those brief detentions which fall short of being full-scale searches and seizures and which are necessitated by law enforcement exigencies such as the need to stop ongoing crimes, to prevent imminent crimes, and to protect law enforcement officers in highly charged situations.[7]

The timeline of events was

- 2:30 p.m.—meeting for methamphetamine sale

- 2:52 p.m.—initial negotiations to meet for drug transaction with Appellant

- 6:30 p.m.—Appellant said they could meet at 10:00 p.m.

- 11:15 p.m.—Officer Miller told patrol officer to stop Appellant.

If the ground justifying the seizure of Barnett was that he was a party to the methamphetamine sale that occurred nine hours earlier in Cresson, why is there no warrant? Miller, the undercover officer, arranged to meet with Appellant five hours before the arrest. What is the warrant exception that justifies suspending the warrant requirement? Again, the trial court did not find that the officer viewed

---

[6]Maj. Op. at 8.

[7]*United States v. Sokolow*, 490 U.S. 1, 12, 109 S. Ct. 1581, 1588 (1989) (Marshall, J., dissenting).

4

a traffic violation; the record therefore clearly reflects that the purpose of stopping Barnett was to search and arrest him.

Reasonable suspicion will not support an arrest.[8] A warrantless arrest must be founded on probable cause plus a recognized exception to the warrant requirement. Probable cause is a higher standard than reasonable suspicion.[9] Probable cause will support a warrant. In the more than five hours that the police waited for Barnett, they made no effort to secure a warrant. Nor does the State suggest any impediment to securing the warrant. There is also no evidence of an exigency.

Somehow, we seem to have concluded in Texas that reasonable suspicion takes the place of the constitutional warrant requirement. This is simply not true. Reasonable suspicion supports an investigation into whether a crime has been or is being committed. If, as the trial court found and the majority accepts, the police were justified in arresting Barnett because he had been a party to the drug transaction, what evidence of that transaction did the police expect to find when they stopped his car and detained him? What was the exigency that prevented

---

[8]*Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013) ("[A]rrests, the most intrusive of Fourth Amendment seizures, . . . are reasonable only if supported by probable cause.").

[9]*Rhoades v. State*, 84 S.W.3d 10, 15 n.2 (Tex. App.—Texarkana 2002, no pet.) ("The rule in *Terry* permits 'stop and frisk' searches for guns, knives, clubs, or other weapons for the purpose of protecting the police officer and others nearby on the basis of reasonable suspicion that the subject of the search might be armed and dangerous, rather than demanding that officers meet the higher standard of probable cause.").

their seeking a warrant during the five hours they did not act? There is no evidence in the record that Barnett was in possession of evidence of the drug transaction that he would destroy as soon as the timer hit five hours. There is no evidence that he would flee when the timer hit five hours. There is a mention of officer safety because Barnett could have had a gun or guns. But why were the guns less of a danger to a lone officer than to officers trained to execute warrants? Why did the threat of danger suddenly arise after five hours expired? Why did the exigency arise only after five hours of doing nothing to seek a warrant?

In this case, the arresting officer admitted that he was looking for a pretext to stop Barnett and search his car. As Barnett argues,

> Under cross-examination, Lane stated that the reason for the traffic stop was the driver's violation of Texas Transportation Code §545.060(a)(1). Lane testified that he had committed in his mind to pull over Appellant's vehicle for some traffic offense, based on the information that he had received from Sgt. Odom.

> Lane testified that Appellant's crossing of the white line occurred for just a few seconds and a short distance (18 inches) into the other lane. Lane testified that there were no cars in the lane beside the lane in which Appellant was driving, nor was there a car in the lane adjacent to that lane or even in the lane to the right of that lane. Lane's in-car video shows the Appellant's car as it negotiated the left hand turn as it was being stopped by the officer.

> Lane had not returned Appellant's license and had not said that Appellant was free to leave prior to the time that he asked to search Appellant's vehicle. [Record citations omitted.]

6

But as the majority points out, the trial court did not find that the police based the detention on a perceived traffic violation. The trial court found only that the police detained Barnett for the reported drug offense:

> Even though Lane testified that one of the reasons he initiated a traffic stop of Barnett's vehicle was because Barnett had failed to maintain a single lane of traffic, the trial court did not make such a finding. Instead, the trial court specifically found that Lane had reasonable suspicion to stop Barnett based on the information he had received from fellow officers regarding Barnett's involvement in the arrests of Youngstrom and Duval. This finding is supported by the law and the facts as determined at the suppression hearing.[10]

The issue is not whether the police had sufficient information to provide probable cause. The issue is why no request for a warrant was submitted to the scrutiny of a detached, neutral magistrate. Nothing in the record suggests that no magistrate was available. The majority does not explain what "law enforcement exigenc[y]" necessitated this warrantless detention or which exception to the warrant requirement justifies the warrantless detention. Because the majority does not explain how the warrantless detention based on information that Barnett had acted as a party to a crime five hours earlier is "constitutionally firm," I must respectfully dissent.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: June 18, 2015

---

[10]Maj. Op. at 9.